UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHEILA M. TROY,

    **Plaintiff,**

        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    **Defendant.**

Civil Action No. 15-916 (JDB-DAR)

## MEMORANDUM OPINION

Plaintiff Sheila Troy challenges the denial of her claim for Social Security Disability Benefits and Supplemental Security Income Benefits. On August 25, 2016, Magistrate Judge Deborah Robinson, to whom this matter had been referred for full case management, issued her Report and Recommendation. Judge Robinson recommended that the decision of the Administrative Law Judge ("ALJ") be affirmed. Thereafter, Troy filed timely Objections to the Report and Recommendation pursuant to Local Civil Rule 72.3(b), and defendant, the Acting Commissioner of Social Security, filed a response. For the reasons set forth in the Report and Recommendation and those explained further below, the Court finds that the ALJ properly denied Troy's claim. The Court accordingly adopts the Report and Recommendation, denies plaintiff's motion for judgment of reversal, and grants defendant's motion for judgment of affirmance.

### I.    BACKGROUND

#### A. Statutory and Regulatory Framework

To qualify for disability insurance benefits under Titles II and XVI of the Social Security Act (the "Act"), a claimant must establish that she is "disabled." 42 U.S.C. §§ 423, 1382. Under the Act, disability means the "inability to engage in any substantial gainful activity by reason of

1

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A); see also id. § 1382c(a)(3)(A). With certain exceptions not present here, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

      The ALJ must employ a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof on the first four steps. Butler v. Barnhart, 353 F.3d 992, 997 (D.C. Cir. 2004). The claimant must first show that she is not presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, she must show that she has a "severe medically determinable physical or mental impairment." Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, she must show that her impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is deemed disabled; if not, the ALJ will assess the claimant's residual function capacity ("RFC"), which reflects "what an individual can still do despite his or her limitations." Ross v. Astrue, 636 F. Supp. 2d 127, 132 (D.D.C. 2009). Fourth, the claimant must show that she is incapable of performing her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant has satisfied the first four steps, the Commissioner bears the burden at step five of demonstrating that the claimant is still able to perform "other work" based on a consideration of her RFC, age, education and work experience. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Butler, 353 F.3d at 997.

2

## B. Factual Background

Troy applied for disability insurance benefits and supplemental security income benefits on September 26, 2011 and September 13, 2011, respectively, alleging that her disability began on March 18, 2010 due to a brain tumor, diabetes, and carpal tunnel syndrome. See Administrative Record ("A.R.") [ECF Nos. 9-1 through 9-13] at 38, 239, 242. Troy's claims were denied initially on January 25, 2012, and again upon reconsideration on July 27, 2012. Id. at 38. Thereafter, Troy filed a timely request for a hearing on September 7, 2012, and one was held before an ALJ on November 15, 2013. Id. In a decision issued December 20, 2013, the ALJ denied Troy's claim, finding she was not "disabled" under the Act. Id. at 45.

In performing the five-step evaluation process, the ALJ found (at steps one and two) that Troy had not engaged in substantial gainful activity since the alleged disability onset date and that she had the following severe impairments: "pituitary adenoma, status post endoscopic resection with septoplasty and inferior turbinectomy in March 2010; rhinosinusitis; GERD with muscle tension dysphonia; diabetes mellitus; asthma; bilateral carpal tunnel syndrome, left worse than right; peripheral vascular disease with diabetic polyneuropathy; thoracic/lumbosacral neuritis/radiculitis; and degenerative disc disease of the cervical spine." Id. at 40. At step three, the ALJ determined that Troy did not have an impairment that met or equaled an impairment listed in Appendix 1. Id. at 41. And at step four, the ALJ found that Troy was not capable of performing her past relevant work as a data entry operator. Id. at 45. Finally, after considering the entire record, the ALJ found that Troy had the RFC to perform sedentary work in that she can occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk about six hours in an eight hour day, sit for a total of about six hours in an eight hour day, and frequently reach, handle, finger, and feel. Id. at 41. Relying on testimony from a

3

vocational expert, the ALJ determined that Troy was capable of performing past relevant work as a computer security specialist, and hence she was not disabled. Id. at 45. Troy sought review of the ALJ's decision with the Appeals Council, which denied her request for review, making the ALJ's ruling the Commissioner's final decision.

Having exhausted her administrative remedies, Troy filed this lawsuit seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). This Court referred the case to a magistrate judge for full case management. See June 16, 2015 Referral Order [ECF No. 3]. Thereafter, Troy filed a motion for judgment of reversal and the Commissioner moved for judgment of affirmance. Troy alleged that the ALJ erred by: (1) failing to provide specific reasons for finding Troy's allegations concerning her impairments were only partially credible; (2) failing to properly weigh the relevant opinion evidence in making the RFC determination; and (3) making the Step 4 determination based on testimony from a vocational expert in response to an incomplete hypothetical. See Pl.'s Mot. for J. of Reversal [ECF No. 13] at 9–18. Defendant responded that "[b]ecause substantial evidence supports the ALJ's conclusions, Plaintiff's challenges should be dismissed, and the ALJ's decision should be affirmed." See Def.'s Mot. for J. of Affirmance [ECF No. 14] at 2.

In her August 25, 2016 Report and Recommendation, Magistrate Judge Robinson recommended that the Court deny Troy's motion and grant defendant's motion. See Report & Recommendation ("R&R") [ECF No. 18] at 1, 13–14. Specifically, she found that the ALJ's credibility determination, RFC determination, and Step 4 determination were all supported by substantial evidence. Id. at 6–13. Plaintiff filed timely but brief Objections to the Report and Recommendation on September 7, 2016, pursuant to Local Rule 72.3(b). See Pl.'s Objections to

R&R [ECF No. 19]. Defendant responded, asking this Court to adopt the Report and Recommendation in full. See Def.'s Resp. to Pl.'s Objections [ECF No. 20] at 2.

## II.     LEGAL STANDARD

A claimant may seek judicial review in a district court of "any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party." 42 U.S.C. §§ 405(g). The court must uphold any decision that "is based on substantial evidence in the record and correctly applies the relevant legal standards." Butler, 353 F.3d at 999; Smith v. Bowen 826 F.2d 1120, 1121 (D.C. Cir. 1987). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Butler, 353 F.3d at 999 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "requires more than a scintilla, but . . . less than a preponderance of the evidence." Id. (citation omitted).

The D.C. Circuit has recognized that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder." Rossello ex rel. Rossello v. Astrue, 529 F.3d 1181, 1185 (D.C. Cir. 2008). The claimant bears the burden of demonstrating that the ALJ's decision was not based on substantial evidence or contained an error of law. Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). The reviewing court must determine whether the ALJ "has analyzed all of the evidence and has sufficiently explained the weight he has given to obviously probative exhibits." Id. at 65 (quoting Butler, 353 F.3d at 999). The court, however, "is not permitted to re-weigh the evidence and reach its own determination." Maynor v. Heckler, 597 F. Supp. 457, 460 (D.D.C. 1984); Butler, 353 F.3d at 999 ("[W]e are not to determine ourselves whether [claimant] is disabled; we assess only whether the ALJ's finding . . . is based on substantial evidence and a correct application of the law").

"[A] district judge shall make a <u>de novo</u> determination of those portions of a magistrate judge's findings and recommendations to which objection is made." Local Civ. R. 72.3(c); <u>see also</u> 28 U.S.C. § 636(b)(1). A district judge is not required, however, to review those potions of a magistrate judge's report to which no objection is made. <u>Porter v. Colvin</u>, 951 F. Supp. 2d 125, 129 (D.D.C. 2013) (citing <u>Thomas v. Arn</u>, 474 U.S. 140, 150–51 (1985)); <u>Miller v. Holzmann</u>, No. 95-1231 (RCL), 2007 WL 710132, at *1 (D.D.C. Mar. 6, 2007). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Local Civ. R. 72.3(c); 28 U.S.C. § 636(b)(1) (same).

### III.   DISCUSSION

Magistrate Judge Robinson made three recommendations regarding the ALJ's decision. She first recommended upholding the ALJ's credibility determinations with respect to Dr. King, Nurse Practitioner Adisa, and plaintiff Troy, because they were all based on substantial evidence. <u>See</u> R&R at 11. She next recommended upholding the ALJ's RFC determination because it was supported by substantial evidence. <u>Id.</u> at 12. Finally, she recommended affirming the ALJ's Step 4 determination. <u>Id.</u> at 13. Troy does not object to the second or third recommendations and the Court sees no reason to disturb those parts of the Report and Recommendation because it agrees that the ALJ's determinations were supported by substantial evidence. Troy does, however, raise two objections to the first recommendation. She first argues that the ALJ failed to properly weigh an opinion offered by Nurse Practitioner ("NP") Adisa, which the ALJ found to be temporary, post-surgery restrictions rather than permanent limitations imposed on Troy. Pl.'s Objections to R&R at 1–2. She next contends that the ALJ did not provide a legally sufficient reason for only partially crediting Troy's statements about the intensity, persistence, and limiting effects of her

6

impairments. Id. at 2. The Court addresses both objections below and concludes that the ALJ's determinations were supported by substantial evidence and free of legal error.

### A. The Medical Opinion of Nurse Practitioner Adisa

Troy's initial objection is that the ALJ failed to properly weigh the opinion evidence of NP Adisa. See id. at 1–2. This concerns a single entry from a March 31, 2010 medical record in which NP Adisa instructed Troy to "avoid strenuous activity, bending, straining, [or] stooping." A.R. at 369. While Troy argues that these were permanent restrictions, the ALJ viewed them as reasonable post-surgery guidance that were "not . . . intended as permanent limitations." Id. at 44. The ALJ accordingly found NP Adisa's opinion to be "credible, but time limited." Id. The ALJ's finding is supported by substantial evidence in the record.

The context of NP Adisa's note in Troy's treatment record provides strong evidence that the instructions were intended as temporary restrictions following recent surgery. On March 18, 2010, Dr. Roberti performed an endoscopic surgery to remove a tumor from Troy's pituitary gland. Id. at 1017–18. After a post-surgical MRI revealed a possible residual pituitary tumor, id. at 311–313, Dr. Singh performed a second endoscopic surgery on March 27, 2010. Id. at 370–71. Troy saw NP Adisa—a colleague of Dr. Roberti and Dr. Singh—just four days after the second surgery for a "post operative examination." Id. at 368. The substance of the medical record makes it abundantly clear that NP Adisa was focused solely on Troy's recovery from the surgery. After describing the surgery performed by Dr. Singh, NP Adisa noted that Troy was feeling better but reported having mild headaches, intermittent nasal symptoms, short term memory loss, and dizziness with abrupt position changes. Id. Under the caption "Assessment / Planning Patient education," NP Adisa advised Troy to schedule a clinical follow-up with Dr. Singh regarding questions about cerebrospinal fluid ("CSF") leaks (a side effect of the endoscopic transphenoidal

7

resection surgery that Troy underwent), and to "avoid strenuous activity, bending, straining, [or] stooping." Id. at 369.

Moreover, NP Adisa does not indicate anywhere in this record that she intended these restrictions to carry forward permanently. Indeed, the findings of NP Adisa's physical examination of Troy would tend to suggest otherwise. During the examination, NP Adisa observed among other things, that Troy was "without any discomfort," had "[f]ull range of motion in all joints [with] no joint swelling or deformities," and had full strength in all muscle groups. Id. at 368. These findings do not comport with Troy's argument that NP Adisa was imposing permanent limitations.

The Court finds additional support for the ALJ's determination that these limitations were temporary based on the similarity between the restrictions imposed by NP Adisa and those contained in the discharge instructions following Troy's initial surgery with Dr. Roberti, two weeks prior. Compare Mar. 18, 2010 Discharge Instructions, A.R. at 326 (advising Troy to avoid "strenuous activity," "lifting anything heavier than 5 pounds," and "blowing [her] nose and coughing"), with Mar. 31, 2010 Record, A.R. at 369 (advising Troy to "avoid strenuous activity, bending, straining, [or] stooping"). Clearly, the March 18 discharge instructions were not intended to be permanent because they advise Troy to avoid blowing her nose and coughing. The same is true of NP Adisa's instructions.

Finally, the strongest evidence that these were not meant to be permanent limitations comes from Troy's subsequent treatment history with Dr. Singh. Following the March 31, 2010 post-operative visit with NP Adisa, Troy continued to be treated by Dr. Singh regularly for the next three and a half years. A.R. at 1073–1163 (showing at least 15 interactions with Dr. Singh). Yet, these restrictions were never repeated during the course of this subsequent treatment. Hence, the

8

Court concludes that there is substantial evidence that supports the ALJ's determination that NP Adisa's opinion though credible, was time limited.[1]

## B. **Credibility of Troy's Statements**

Troy next argues that the ALJ erred by only partially crediting her statements about the severity of her impairments because he allegedly did so based just on inconsistencies between her statements and the objective medical evidence. See Pl.'s Objections to R&R at 2. "The credibility determination is solely within the realm of the ALJ. A reviewing court will only intercede where an ALJ fails to articulate a rational explanation for his or her finding." Grant v. Astrue, 857 F. Supp. 2d 146, 156 (D.D.C. 2012). The ALJ must only include a claimant's "credibly established limitations" in the RFC assessment. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). For the reasons described below, the Court finds that the ALJ correctly applied the relevant legal standards and his credibility determination was supported by substantial evidence.

The governing regulations prescribe a two-step process to determine whether a claimant's symptoms (including pain) affect her ability to perform basic work activities. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must show "medical signs or laboratory findings" evidencing a "medically determinable impairment that could reasonably be expected to produce" the alleged pain. Id. §§ 404.1529(a)–(b), 416.929(a)–(b). Here, the ALJ found step one satisfied because "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." A.R. at 42.

---

[1] Magistrate Judge Robinson also noted that NP Adisa did not qualify as an acceptable medical source under the governing regulations at the time Troy filed her claim. See R&R at 10. The Court notes, however, that the regulations have been amended and for claims filed after March 27, 2017, a "Licensed Advance Practice Registered Nurse, or other licensed advanced practice nurse with another title" may be considered an "acceptable medical source." 20 C.F.R. §§ 404.1502(a), 416.902(a) (effective Mar. 27, 2017). The Court further observes that this did not appear to be part of the ALJ's determination as he found NP Adisa "credible" and did not state that she was not an acceptable medical source.

Second, the ALJ assesses the persistence and intensity of pain and the extent to which it impairs claimant's ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). This second step requires the ALJ to evaluate claimant's statements as well as "all [of] the available evidence," including "claimant's medical history, medical signs and laboratory findings; objective medical evidence of pain; the medical opinions of the claimant's treating physician[s]; and any other evidence that bears on the severity of the pain."[2] Butler v. Barnhart, 353 F.3d 992, 1004 (D.C. Cir. 2004) (citing 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929 (c)(1)–(3)). Because pain is subjective, the ALJ evaluates the claimant's statements "in relation to the objective medical evidence and other evidence," including "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence." Barnhart, 353 F.3d at 1004 (quoting 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). The ALJ may not reject claimant's statements solely because they are not substantiated by objective medical evidence; rather, he "must consider the entire case record," Barnhart, 353 F.3d at 1005 (quoting Evaluation of Symptoms in Disability Claims: Assessing the Credibility of An Individual's Statements, 1996 WL 374186, at *1 (SSA July 2, 1996)[3]), and will take account of claimant's statements to the extent they "can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(c), 416.929(c).

---

[2] Factors relevant to a claimant's symptoms, such as pain, which the ALJ will consider include: the claimant's daily activities; the "location, duration, frequency, and intensity of" the claimant's pain; "[p]recipitating and aggravating factors"; "[t]he type, dosage, effectiveness, and side effects of any medication" for pain relief; treatment the claimant receives or has received for pain relief; "[a]ny measures" the claimant uses to relieve pain; and "[o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain." Id. §§ 404.1529(c)(3), 416.929(c)(3).

[3] This ruling has been superseded by Social Security Ruling 16-3p, which became effective March 28, 2016. Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (SSA Mar. 16, 2016); see also 2016 WL 1237954 (correcting effective date). The new ruling does not apply retroactively to claims, like Troy's, that were filed before its effective date. Ali v. Colvin, No. 14-CV-230 (EGS), 2017 WL 680366, at *6 n.1 (D.D.C. Feb. 21, 2017).

Troy's objection fails for two reasons. To begin with, Troy does not identify any subjective complaints that the ALJ allegedly failed to evaluate, let alone one that was rejected based solely on the objective medical evidence. See Pl.'s Objections to R&R at 2. Indeed, the ALJ explicitly listed Troy's statements concerning the limiting effects of her symptoms including that she had pain in her extremities related to diabetic and cervical neuropathy, difficulty buttoning clothing and getting in and out of the bathtub, and that household chores and meal preparation took her more time to complete. A.R. at 42. And by limiting Troy to sedentary work with further restrictions on standing, sitting, carrying and manipulation, it is clear that the ALJ considered each of these statements and recognized that Troy had significant (but not extreme or disabling) work-related restrictions resulting from her impairments. See id. at 41.

Moreover, Troy is wrong that the ALJ misapplied the law in making his credibility determination. The ALJ began by fully stating the correct legal standard. See id. More importantly, he then properly applied that standard and articulated the specific reasons that he found that Troy's statements were "not entirely credible." Id. at 42. The ALJ did not make his credibility determination by focusing solely on pieces of objective evidence; rather, he evaluated all of the evidence in the entire record including Troy's statements about her functional limitations to the Commissioner and to her treating doctors, objective medical evidence, opinions from Troy's treating doctors, opinions from state medical examiners, and the ALJ's own observations of Troy during the hearing. See id. at 42–45. The ALJ stated specific reasons for the weight that he assigned to the opinions of each of Troy's treating doctors about her functional limitations. Id. Ultimately, the ALJ determined that the opinions offered by the state medical consultants were credible and most consistent with the objective clinical evidence, "which show[ed] very little abnormality on physical examinations of record[,] and[] specifically, consistently normal strength

and sensory findings in all extremities," and with the diagnostic evidence, which showed no more than mild to moderate abnormality on MRI and nerve conduction testing. Id. at 44. But the ALJ did not stop there. He further determined that additional limitations on lifting and carrying were warranted based on the credible portions of the opinions offered by Dr. King. Id. Nowhere does the ALJ indicate that he rejected Troy's statements based on the objective medical evidence alone. It is not this Court's job to second guess the ALJ by reweighing the evidence. See Maynor, 597 F. Supp. at 460. Hence, the Court finds no basis to overturn the ALJ's credibility determination.

## CONCLUSION

For the reasons explained above, the Court rejects Troy's two objections and adopts the Report and Recommendation. Accordingly, the Court will deny Troy's motion for judgment of reversal and grant defendant's motion for judgment of affirmance. A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 21, 2017